UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1330

SUSAN H. ABELES,

          Plaintiff – Appellant,

     v.

METROPOLITAN WASHINGTON AIRPORTS AUTHORITY,

          Defendant – Appellee,

     and

JULIA HODGE; VALERIE O'HARA,

          Defendants.

----------------------------------------

THE   AMERICAN   JEWISH   COMMITTEE;   THE    NATIONAL   JEWISH
COMMISSION ON LAW AND PUBLIC AFFAIRS; THE BECKET FUND FOR
RELIGIOUS LIBERTY,

          Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Claude M. Hilton, Senior District Judge.  (1:15-cv-00792-CMH-IDD)

Argued:  December 8, 2016                      Decided:  January 26, 2017

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

**ARGUED:** Nathan Lewin, LEWIN & LEWIN, LLP, Washington, D.C., for Appellant. Bruce P. Heppen, WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Washington, D.C., for Appellee. **ON BRIEF:** Joseph W. Santini, Morris Kletzkin, FRIEDLANDER MISLER, PLLC, Washington, D.C., for Appellee. Dennis Rapps, New York, New York; Meir Katz, MAGEN LEGAL, Baltimore, Maryland, for Amicus The National Jewish Commission on Law and Public Affairs "COLPA". Eric C. Rassbach, THE BECKET FUND FOR RELIGIOUS LIBERTY, Washington, D.C., for Amici The American Jewish Committee and The Becket Fund for Religious Liberty.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Plaintiff-Appellant Susan H. Abeles sued her employer Metropolitan Washington Airports Authority ("MWAA" or "Defendant") and her supervisors, alleging religious discrimination in violation of Title VII, deprivation of civil rights under 42 U.S.C. § 1983, and violations of federal and state religious freedom acts. The district court granted the individual supervisors' motions to dismiss but denied MWAA's motion to dismiss. After discovery, the district court granted summary judgment to MWAA on all claims. Plaintiff appeals each of these rulings. For the reasons that follow, we affirm.

I.

A.

Plaintiff, a practicing Orthodox Jew, began working at MWAA in 1987.[1] MWAA knew Plaintiff's religious beliefs prohibited her from working on Jewish holidays. During 2012 and 2013--the relevant time period for this case--Plaintiff reported to Valerie O'Hara ("O'Hara"), who in turn reported to Julia Hodge ("Hodge"). In her 26 years of working at MWAA, Plaintiff's supervisors always allowed Plaintiff to leave early on Fridays so that she could arrive home before sundown to observe the Sabbath in the winter months. On occasion, MWAA also provided kosher food at staff events in

---

[1] MWAA is a "regional entity" that the Virginia General Assembly and the District of Columbia City Council, acting pursuant to an interstate compact, jointly created for the purpose of operating the federally owned Washington-Dulles International Airport and Ronald Reagan Washington National Airport. *Washington-Dulles Transp., Ltd. v. Metro. Wash. Airports Auth.*, 263 F.3d 371, 373 (4th Cir. 2001).

recognition of Plaintiff's religious dietary requirements. MWAA--including Plaintiff's first-level supervisor, O'Hara--never denied Plaintiff leave to observe a religious holiday when she requested leave prior to being out of the office.

The instant dispute arises from Plaintiff's failure to follow MWAA's formal procedure for requesting leave. MWAA's Absence and Leave Program ("Leave Policy") specifies that employees must request leave by form or email and receive approval before taking leave. Plaintiff was aware of the Leave Policy and had seen the document before.

In addition to MWAA's formal process, the department in which Plaintiff worked used an informal planning calendar to help determine coverage based on when people would be in the office. In January 2013, Plaintiff noted on this internal planning calendar the dates she anticipated she would be out on leave that year. After marking the internal planning calendar, Plaintiff did not discuss the specific dates with her supervisors. O'Hara and Hodge never told Plaintiff that putting dates on the internal planning calendar relieved her of her responsibility to request leave properly and receive advance approval.[2]

In February 2013, Plaintiff had multiple meetings with O'Hara and Hodge, as well as MWAA's Labor Relations Specialist Juan Ramos, regarding her "2013 Work Goals and Performance Factors." That plan highlighted the need for her to submit her reports on time and that she must "[u]se leave according to the Airports Authority's Absence and Leave Policy." J.A. 347.

---

[2] Plaintiff alleges that the MWAA left leave policy to the discretion of individual supervisors. However, MWAA maintains that the internal planning calendar did not substitute for formal procedure as stipulated by the Leave Policy.

In 2013, the eight-day Jewish holiday of Passover occurred between Tuesday, March 26 and Tuesday, April 2. Plaintiff's religious beliefs preclude labor on the first two days and last two days of Passover. On Thursday, March 21, 2013, at a weekly meeting, Plaintiff requested leave from O'Hara to observe the first two days of Passover on March 26 and 27, 2013. Plaintiff discussed her leave with O'Hara, received advance approval, and then sent O'Hara an Outlook calendar invitation. On March 21, Plaintiff knew that she would also need to take leave on Monday, April 1 and Tuesday, April 2, but did not request leave for those days.

After observing the first two days of Passover, Plaintiff returned to work on Thursday, March 28, 2013. O'Hara was also in the office on March 28, but Plaintiff did not request leave that day for April 1 and 2, 2013, the last two days of Passover.

On Friday, March 29, 2013, Plaintiff sent an Outlook calendar invitation to O'Hara and Hodge, "notifying" them that she would be out of the office on April 1 and 2, 2013. Plaintiff did not intend this Outlook calendar invitation to be a request for leave, but merely a "reminder" of the dates she had placed on the internal calendar. J.A. 283, 289. Plaintiff planned to discuss her leave request with O'Hara in person on March 29, 2013, but O'Hara was out of the office that day. O'Hara did not respond to Plaintiff's March 29, 2013, Outlook calendar invitation.[3]

---

[3] Although Hodge, Plaintiff's second-level supervisor, responded to Plaintiff's March 29, 2013, Outlook calendar invitation, Hodge stated in her deposition that she assumed Plaintiff had already sought and received approval consistent with the Leave Policy from O'Hara, in part because Plaintiff explained in a reply email that the calendar invitation was a "reminder of [her] scheduled leave." J.A. 326.

5

On April 3, 2013, when O'Hara returned to the office, she sent an email to Plaintiff that stated her absence on April 1 and 2 "was not pre-approved" by O'Hara or Hodge and that "[a]s a matter of process" the internal planning calendar "is for the Manager's resource planning" and "not for pre-approving leave." J.A. 10; *see also* J.A. 114. O'Hara continued: "Sending a meeting request on a day that I'm on leave to request leave for the following two days is unacceptable." J.A. 10; *see also* J.A. 114. In the email, O'Hara also granted Plaintiff's telephone request for leave on April 3, 2013-- leave Plaintiff requested due to the death of an uncle. O'Hara subsequently classified Plaintiff's absence on April 1 and 2 as "Absent Without Leave" or "AWOL."

On April 12, 2013, Plaintiff received a letter from Hodge proposing a five-day suspension as discipline for (1) insubordination, for failing to meet deadlines regarding deliverables including a plan to automate her work and completion of her annual performance goals; (2) failure to follow the procedure for requesting leave; and (3) absence without leave on April 1 and 2. In her deposition testimony, Plaintiff did not refute any of the facts in the letter, other than to clarify that she failed to meet one deadline because of the death of an aunt.

Regarding insubordination, the Table of Penalties in MWAA's Conduct and Discipline Directive states that the penalty for a first offense of "failure to carry out orders" is "oral reprimand to 5 days suspension," and the penalty for a first offense of "refusal to carry out orders" is "5 days suspension to removal." J.A. 131, 220. Plaintiff's suspension became final on May 3, 2013.

Later, Plaintiff requested leave to observe another Jewish holiday in May 2013, which O'Hara granted. Plaintiff retired from MWAA on May 31, 2013.

On September 17, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging religious discrimination in violation of Title VII. On February 7, 2015, Plaintiff received a "Dismissal and Notice of Rights" letter from the EEOC, which provides a potential plaintiff the right to sue.

B.

On May 5, 2015, Plaintiff filed suit in the United States District Court for the District of Columbia against MWAA, and supervisors O'Hara and Hodge, alleging violations of Title VII, 42 U.S.C. § 2000e-2(a)(1) (employment discrimination on the basis of religion), 42 U.S.C. § 1983 (deprivation of civil rights), the federal Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., and the Virginia Religious Freedom Act ("VRFA"), Va. Code Ann. Section 57-2.02. The district court transferred the case to the United States District Court for the Eastern District of Virginia.

On August 17, 2015, the district court granted Hodge and O'Hara's motions to dismiss, but denied MWAA's motion to dismiss. The district court later granted summary judgment to MWAA on all claims, finding that the record does not reflect direct or circumstantial evidence of religious discrimination, the § 1983 claim is time

barred, and the federal and state religious freedom acts do not apply.[4]  Plaintiff appeals each of these rulings.

II.

We review de novo a district court's decisions to grant a motion to dismiss and a motion for summary judgment.  *White v. BFI Waste Services, LLC*, 375 F.3d 288, 291, 294 (4th Cir. 2004).  In reviewing the district court's grant of summary judgment, we view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Id.* at 294.  However, the nonmoving party must set forth specific facts that go beyond the "mere existence of a scintilla of evidence."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The nonmoving party bears the burden of demonstrating a genuine issue of material fact for trial; conclusory or speculative allegations do not suffice.  *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

---

[4] Because we conclude that MWAA did not discriminate against Plaintiff on the basis of her religion in violation of Title VII, and the record indicates MWAA always allowed Plaintiff to observe the Sabbath and religious holidays if she complied with formal procedure, MWAA necessarily did not "substantially burden" Plaintiff's "exercise of religion" in violation of the federal and state religious freedom acts.  42 U.S.C. § 2000bb-1(u); Va. Code Ann. § 57-2.02(B).  Therefore, we decline to reach the issue whether those statutes--which apply only to "government" and a "government entity"--apply to MWAA.

III.

A.

Title VII of the Civil Rights Act of 1964 provides two ways of proving discrimination in employment by showing: (1) "disparate treatment" or (2) "disparate impact." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015); 42 U.S.C. § 2000e-2(a). Plaintiff alleges "disparate treatment"--that is, "intentional discrimination"--under 42 U.S.C. § 2000e-2(a)(1) on the basis of her religion. That provision prohibits an employer from (1) "discriminat[ing] against any individual" (2) "because of" (3) "such individual's . . . religion." *Id.* § 2000e-2(a)(1). Title VII, in turn, defines religion to "includ[e] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to *reasonably accommodate* to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j) (emphasis added). "Because this definition includes a requirement that an employer 'accommodate' an employee's religious expression," an employee alleging intentional discrimination under § 2000e-2(a)(1) can bring suit based on a disparate-treatment theory or a failure-to-accommodate theory. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)).

Plaintiff argues that the district court erred by granting summary judgment to Defendants on her Title VII claim because it (1) impermissibly resolved factual issues when evaluating her claim under a disparate-treatment theory and (2) failed to consider her claim under a failure-to-accommodate theory. Plaintiff also argues (3) that the

9

district court erred in granting her supervisors' motions to dismiss. We consider each argument in turn.

1.

"To prove a claim under the disparate treatment theory, an employee must demonstrate that the employer treated her differently than other employees because of her religious beliefs." *Chalmers*, 101 F.3d at 1017 (emphasis omitted). Absent direct evidence of discrimination,[5] a plaintiff can establish discrimination via circumstantial evidence under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden-shifting framework first requires the plaintiff to establish a prima facie case of discrimination before the burden shifts to the employer to provide evidence of a legitimate, nondiscriminatory reason for its employment action; if the employer does so, the burden shifts back to the employee to show that the employer's proffered reason is pretextual. *Chalmers*, 101 F.3d at 1018. To establish a prima facie case, a plaintiff must show "(1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment"--which here means more severe discipline--"than similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Cook v. CSX Transp. Co.*, 988 F.2d 507, 511 (4th Cir. 1993).

Applying this framework, the district court concluded that Plaintiff had not established a prima facie case of discrimination under a disparate-treatment theory. As

---

[5] Plaintiff does not contest the district court's conclusion that Plaintiff adduced no direct evidence of discrimination.

an individual alleging discrimination on the basis of her faith, Plaintiff is a member of a protected class. And she suffered an adverse employment action because MWAA suspended her, in part, because of the allegedly discriminatory AWOL finding. However, the district court concluded that "Plaintiff fails to establish a prima facie case of discrimination under Title VII because she cannot demonstrate satisfactory job performance or that she was treated differently from similarly situated employees outside the protected class." J.A. 514. We agree.

First, as to her job performance, Plaintiff argues that the district court incorrectly determined that she did not dispute the charge of insubordination and that it alone merited a five-day suspension, regardless of the allegedly discriminatory AWOL classification. The record belies Plaintiff's argument. As MWAA notes, the Table of Penalties contained in MWAA's Conduct and Discipline Directive states that the penalty for a first offense of "failure to carry out orders" is "oral reprimand to 5 days suspension," and the penalty for a first offense of "refusal to carry out orders" is "5 days suspension to removal." J.A. 131, 220. Plaintiff points to a portion of Hodge's deposition to suggest that, absent Plaintiff's failure to request leave properly, MWAA would only have "reprimanded" Plaintiff for insubordination. But Hodge did not so concede.[6]

Plaintiff also asserts that she disputed the allegations regarding insubordination in her deposition. But the portion she cites reveals that she did not refute any of the

---

[6] Hodge stated: "*At a minimum*, [Plaintiff] would have been reprimanded." J.A. 334 (emphasis added).

11

charges. J.A. 292–94. MWAA attorneys asked Plaintiff several times whether the contents of the April 12 disciplinary letter, including the charge of insubordination--paragraph by paragraph--were inaccurate. She disputed nothing, and only explained the tardiness of one report by citing the death of an aunt. Plaintiff also asserts that she "disputed" part of MWAA's Statement of Undisputed Material Facts, which cited deposition testimony explaining that Plaintiff's "supervisors had concerns regarding her deteriorating performance and attendance and began to supervise her more closely in an effort to improve both. Numerous meetings were held throughout the first three months of 2013 in an effort to improve [Plaintiff's] performance and attendance." J.A. 127 ¶ 17. Without any citation to the record, Plaintiff simply stated "False" in her Response to Defendant's Statement of Undisputed Material Facts. J.A. 427.[7] Conclusory allegations do not suffice to create a genuine issue of material fact for trial. *See Thompson*, 312 F.3d at 649.

Even if Plaintiff could establish a genuine issue of material fact regarding whether her work performance was satisfactory, Plaintiff adduces no evidence that MWAA treated her differently from similarly-situated employees outside her protected class. In Plaintiff's Statement of Undisputed Material Facts, she states--again, with no citation to the record or other evidence--that: "No employee of MWAA has ever been suspended for

---

[7] Plaintiff also argues that she disputed the charge of insubordination in a letter written by her attorney to MWAA. However, that letter is not included in the record on appeal. An "appellate court normally will not consider facts outside the record on appeal," and we decline to do so with regard to this letter. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

as much as three (3) days for being AWOL or for taking annual leave without approval of a request of annual leave." J.A. 435. Plaintiff provides no evidence that she received more severe discipline than similarly-situated employees outside her protected class, nor any comparators on the basis of which to make this assessment. *See Cook*, 988 F.2d at 511.

Plaintiff does not establish a genuine dispute of material fact either that she performed her work satisfactorily or that MWAA disciplined her more severely than other similarly-situated employees outside her protected class. Plaintiff thus fails to establish a prima facie case of discrimination under a disparate-treatment theory.

2.

Plaintiff's "primary argument is not that the district court erred in its analysis of its claim under the disparate treatment theory, but that the court erred in failing to analyze her suit under the accommodation theory." *Chalmers*, 101 F.3d at 1018. Unlike disparate treatment, under a failure-to-accommodate theory "an employee can establish a claim even though she cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for her discharge." *Id.* To establish a prima facie failure-to-accommodate claim, a plaintiff must show (1) she has a bona fide religious belief or practice that conflicts with an employment requirement and (2) the need for an accommodation of that religious belief or practice served as a motivating factor in the employer's adverse employment action. *See id.* at 1019; *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015) (clarifying that "the rule for disparate-treatment claims based on a failure to

13

accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions"). Here, Plaintiff adduced evidence of neither, although we need not proceed beyond the first.

With respect to the leave at issue, Plaintiff does not establish the first element of her claim: a religious conflict with an employment requirement. Her observance of the Sabbath during winter months when the sun sets earlier created a conflict with her normal working hours on Fridays, and MWAA consistently accommodated her request to leave work early. Regarding Jewish holidays, however, no conflict existed between Plaintiff observing religious holidays and following MWAA's neutral rules requiring advance approval of leave following specified procedures. Nor could she establish such a conflict. The Leave Policy merely requires employees to request leave by form or email, and obtain advance approval.

Of particular significance is the fact that Plaintiff points to no occasion on which MWAA denied leave when she requested leave in compliance with MWAA's Leave Policy. To the contrary, the evidence indicates MWAA would have granted her request to take leave if she had abided by the Leave Policy. MWAA regularly granted her leave to observe religious holidays for the prior 26 years and, in 2013, approved leave for the first two days of Passover and another religious holiday several weeks later. Plaintiff followed the Leave Policy on those occasions. She failed to obtain advance approval for her absence on April 1 and 2, which coincided with the last two days of Passover in 2013,

14

and that failure to comply is the sole differentiating factor from every occasion on which leave was granted.

3.

Plaintiff also argues that the district court erred in dismissing respondents O'Hara and Hodge, Plaintiff's first- and second-level supervisors. In *Lissau v. Southern Food Services, Inc.*, we held that supervisors are not liable in their individual capacities for Title VII violations. 159 F.3d 177, 180 (4th Cir. 1998).[8] Plaintiff concedes that *Lissau* dictates dismissing her Title VII claim against Hodge and O'Hara. See Reply Br. at 17–18.[9]

IV.

Plaintiff next argues that the district court erred by granting summary judgment to MWAA on the § 1983 claim when it found that the applicable statute of limitations barred the claim. Because § 1983 does not contain an express statute of limitations, we use state statutes of limitations, and here Virginia's two-year statute-of-limitations period applies. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011).

---

[8] The district court dismissed the individual defendants on the basis that individual supervisors may not be sued personally when they are carrying out personnel decisions of a plainly delegable character, relying on *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 n.1 (4th Cir. 1994). J.A. 107. We affirm, however, under the blanket rule this court announced in *Lissau*, 159 F.3d at 180.

[9] Plaintiff nevertheless contends that her § 1983 claim should remain against these individuals. However, because we conclude that Plaintiff's § 1983 claim is time barred, *see infra* Part IV, the district court properly dismissed the individual supervisors.

Federal law controls when the applicable statute-of-limitations period begins to run; this occurs when the claim accrues--that is, when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Id. (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Plaintiff does not dispute that the action accrued on May 3, 2013, when her disciplinary action became final. *See* Appellant's Br. at 37–38. Plaintiff filed suit on May 5, 2015, more than two years later. The statute of limitations therefore bars her claim.[10]

V.

The district court properly dismissed Plaintiff's individual supervisors and granted summary judgment to MWAA on both the Title VII and § 1983 claims. Accordingly, the judgment of the district court is

*AFFIRMED.*

---

[10] Plaintiff suggests that she could not file her § 1983 claim earlier. That is incorrect. Plaintiff filed a Charge of Discrimination with the EEOC on September 17, 2013. Although she did not receive a right-to-sue letter until February 7, 2015, she could have requested one after the 180-day statutory period expired. See 42 U.S.C. § 2000e-5(f)(1); *see also* 29 C.F.R. § 1601.28 (explaining that upon request by an aggrieved party "the Commission shall promptly issue" notice of right to sue "at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission"). For this reason, Plaintiff's suggestion that Virginia's tolling provision, Va. Code Ann. Section 8.01-229(E)(1), tolled her case while her claim was pending before the EEOC lacks merit.