# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 15, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20517

———————

Elimelech Shmi Hebrew,

*Plaintiff—Appellant*,

*versus*

Texas Department of Criminal Justice,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2929

———————————————————————

Before Dennis, Engelhardt, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

The Texas Department of Criminal Justice fired Elimelech Shmi Hebrew after he refused to cut his hair and beard in violation of his religious vow. Hebrew brought a Title VII suit, alleging religious discrimination and failure to accommodate his religious practice. The district court granted summary judgment in favor of defendants. In accordance with the Supreme Court's recent decision in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), we reverse.

No. 22-20517

## I.

Elimelech Shmi Hebrew is a devout follower of the Hebrew Nation religion. As part of his religion, he has taken a Nazarite vow to keep his hair and beard long—a vow he has kept for over two decades.

In August 2019, Hebrew was hired by the Texas Department of Criminal Justice ("TDCJ") as a Correctional Officer. On August 19, he reported for duty to the TDCJ training academy. TDCJ officers quickly singled out him among the forty trainees. The officers told Hebrew that he could not stay at the academy unless he cut his hair and shaved his beard in compliance with TDCJ's grooming policy.

At the time, TDCJ's grooming policy forbade male officers from having beards unless they had a medical skin condition. The policy also prohibited male officers—but not female officers—from having long hair. TDCJ has since amended its policy to allow all male officers to grow quarter-inch beards.

When approached at the training academy, Hebrew informed the officers that he took a religious vow to keep his hair and beard long, and nothing could make him violate that vow. The officers then gave him an ultimatum: break his vow and cut his hair, or leave the academy without pay while his accommodation request was pending. Hebrew chose the latter option. The officers lined him up against a wall and photographed him from the front and side. ROA.502–03. They also gave him a religious accommodation request form. Hebrew completed the form and requested an accommodation to keep his hair and beard that same day. He was forced to leave the academy while his application was pending and was placed on leave without pay. A week later, Hebrew filed a second request for religious accommodation with the appropriate documentation and a recitation of his Nazarite vow.

No. 22-20517

Two months after that, Hebrew received a letter from TDCJ denying his requests. It said:

> The Civil Rights Act of 1964, 42 USC 2000e(j) requires employers to reasonably accommodate employees by allowing them the opportunity to worship or observe their religious practices. Beards are prohibited for safety reasons as security staff must be able to properly wear a gas mask when chemical agents are being utilized throughout the unit. Long locks of hair could be used against you by an offender overpowering you especially from behind. Also, with this amount of hair contraband items cannot be easily detected during search procedures of the unit. Additionally, beards and hair of this length are prohibited per PD-28 Dress and Grooming Standards, therefore, your request to wear a long beard and long locks is DENIED with no further actions.

ROA.518; *see also* 406 (internal email providing same reasoning).

Hebrew received the letter. But he chose to keep his hair and beard in obedience to his religious vow. As a result, TDCJ terminated his employment.

Hebrew exhausted his administrative remedies. He then filed a *pro se* lawsuit against TDCJ and various officers, which alleged claims of religious discrimination and failure to accommodate under Title VII of the Civil Rights Act of 1964. The district court dismissed several officers from the suit. The remaining defendants, TDCJ and Executive Director of TDCJ Bryan Collier, moved for summary judgment. The district court found that Hebrew had established a prima facie case of religious discrimination. Nonetheless, it found that TDCJ had a legitimate, non-discriminatory reason for firing Hebrew—to promote the safety of officers and security of prisons. The district court also recognized that TDCJ failed to accommodate his religious practice. But it rejected Hebrew's failure to accommodate claim, reasoning that the accommodation would impose an undue hardship on TDCJ. The district court

3

No. 22-20517

emphasized that TDCJ would have to bear more than a *de minimis* cost because coworkers would have to "perform extra work to accommodate" Hebrew's religious practice. ROA.884. The district court granted summary judgment in favor of the defendants. Hebrew timely appealed.

We review the district court's summary judgment order *de novo*. *See Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 414 (5th Cir. 2021). We must construe all facts in favor of Hebrew as the non-moving party.

## II.

Title VII forbids religious discrimination in employment: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a). The statute defines "religion" broadly to include "all aspects of religious observance and practice, as well as belief." *Id.* § 2000e(j).

Title VII also requires employers to accommodate the religious observances or practices of applicants and employees. *See id.* §§ 2000e-2(a), 2000e(j). Such accommodations often go above and beyond the non-religious accommodations they might otherwise provide. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("Title VII does not demand mere neutrality with regard to religious practices . . . . Rather, it gives them favored treatment . . . ."). In short, Title VII imposes on employers both a negative duty not to discriminate and a positive duty to accommodate.

We hold TDCJ breached both duties. TDCJ (A) failed to accommodate Hebrew's religious practice and (B) discriminated against him on the basis of his religious practice.

4

No. 22-20517

## A.

First, Hebrew's failure to accommodate claim. Title VII requires employers to accommodate "all aspects of religious observance and practice" unless the employer demonstrates that he cannot accommodate the employee's religious observance or practice "without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); *see Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

All agree that TDCJ failed to accommodate one of Hebrew's fundamental religious practices by requiring him to cut his long hair and long beard in violation of his religious vow. The only question is whether TDCJ has met its burden to show that granting Hebrew's requested accommodation—to keep his hair and beard—would place an undue hardship on TDCJ. We (1) hold TDCJ cannot meet the undue hardship standard, and (2) the Department's counterarguments are unavailing.

### 1.

The Supreme Court recently clarified the undue hardship standard. *See Groff v. DeJoy*, 143 S. Ct. 2279 (2023). Many lower courts, including the district court in this case, had read a prior Supreme Court decision, *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), to hold an "undue hardship" was "any effort or cost that is 'more than . . . *de minimis*.'" *Groff*, 143 S. Ct. at 2286 (quoting *Hardison*, 432 U.S. at 84). In *Groff*, a unanimous Court forcefully rejected this reading. The Court held that a showing of "undue hardship" requires something far greater: an employer must prove that the burden of accommodation "is substantial in the overall context of an employer's business." *Id.* at 2294. The Court looked to various definitions of "hardship" and concluded:

> under any definition, a hardship is more severe than a mere burden. So even if Title VII said only that an employer need

5

No. 22-20517

> not be made to suffer a "hardship," an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier "undue" means that the requisite burden, privation, or adversity must rise to an "excessive" or "unjustifiable" level.

*Ibid.* (citation omitted). This is a heavy burden and requires something far greater than *de minimis*—something more akin to "substantial additional costs or substantial expenditures." *Id.* at 2295 (quotation omitted).

The Court went on to offer a formulation for lower courts to apply:

> We think it is enough to say that an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business.

> What matters more than a favored synonym for "undue hardship" (which is the actual text) is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer.

*Ibid.* (citation and quotation omitted).*

---

* The *Groff* Court's reference to "all relevant factors in the case at hand" obliges the lower courts to tailor their analysis of Title VII to each individual case. *Ibid.*; *cf. Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021) ("Rather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants.") (citation and quotation omitted). The reference to the "size and operating cost" of the employer, *Groff*, 143 S. Ct. at 2295, suggests that, all other things being equal, larger businesses and institutions must bear a heavier burden in proving undue hardship.

6

The Court also specified what an undue hardship is not. Because the hardship must affect "the conduct of the employer's business," evidence of "impacts on coworkers is off the table for consideration" unless such impacts place a substantial strain on the employer's business. *Groff*, 143 S. Ct. at 2296 (quoting 42 U.S.C. § 2000e(j)). Even if an impact on coworkers places a substantial strain on the employer's business, that impact "cannot be considered 'undue'" if it is attributable to religious bias or animosity. *Ibid.*

Finally, the Court noted that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Ibid.* If a requested accommodation poses an undue hardship, the employer must *sua sponte* consider other possible accommodations. *See id.* at 2297. Only after thorough consideration of other options may the employer deny the employee's request for accommodation. *Cf. Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013) ("On this issue, [the employer] bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship.") (cited in *Groff*, 143 S. Ct. at 2296).

TDCJ cannot meet the requirements of Title VII for at least four reasons. First, TDCJ merely argues that the burden it would face is more than *de minimis*. ROA.477. But as *Groff* held, a *de minimis* burden does not qualify as an undue hardship. Thus, TDCJ's claim fails at the starting line. Second, TDCJ nowhere identifies any actual costs it will face—much less "substantial increased costs" affecting its entire business—if it grants this one accommodation to Hebrew. *See Groff*, 143 S. Ct. at 2295. TDCJ simply identifies its security and safety concerns without regard to costs. Likewise, TDCJ's reference to possible additional work for Hebrew's coworkers is insufficient to show an undue hardship. *See id.* at 2296. Finally, TDCJ did not present any evidence that it considered other possible accommodations. *See*

*id.* at 2297. It simply rejected Hebrew's accommodation request without a thorough examination of "any and all" alternatives. *See Adeyeye*, 721 F.3d at 455.

### 2.

TDCJ raises three counterarguments. None is persuasive.

First, TDCJ argues that this accommodation would pose an undue hardship because Hebrew could hide contraband in his hair or beard. But the district court admitted that TDCJ could simply search Hebrew before he entered the prison facilities. *See* ROA.885. As its own expert attested, TDCJ already "conducts searches of everyone who enters a unit, including its own employees." ROA.552. And TDCJ already searches officers' hair and beards if it suspects hidden contraband. ROA.553; *cf. Holt v. Hobbs*, 574 U.S. 352, 365 (2015) (holding beard searches address prison's safety concerns in context of religious discrimination claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")). TDCJ's expert only feared that "if all officers were permitted to have long hair and long beards, the TDCJ may need to consider changing the way officers are searched." ROA.553. But a hypothetical policy reevaluation if *everyone* received an accommodation cannot show that TDCJ faces an undue hardship if it grants *one* accommodation. *See Groff*, 143 S. Ct. at 2295 (instructing us to look to "the case at hand" and "the *particular* accommodations at issue" (emphasis added)). The fact that a search of Hebrew might take a few extra minutes would not pose a "substantial" or "undue hardship" "in the overall context" of TDCJ's $2.4 billion FY2022 budget. *Id.* at 2294; *Explore Expenditures*, Texas Comptroller, https://perma.cc/5FVH-WHV9 (last visited September 12, 2023) (select "Expenditures"; then select "FY2022"; then select "All Expenditures"; select "Texas Department of

No. 22-20517

Criminal Justice" from AGENCY dropdown; and finally select "General Revenue Fund" from APPROPRIATED FUND dropdown).

Second, TDCJ points to the potential safety risks of wearing a gas mask with a beard. Officers sometimes use chemical agents in prisons. When they do, TDCJ encourages the use of gas masks "if time and if the situation permits." ROA.556. Beards can inhibit masks from properly sealing and possibly expose officers to chemicals.

Importantly, both the mask instruction manual and TDCJ's expert stated that *any* length of beard can prevent proper sealing. ROA.557. In fact, TDCJ's expert acknowledged that he has seen men with "even limited facial hair" unable to seal their masks. ROA.559. Nonetheless, when TDCJ denied Hebrew's accommodation, it allowed officers with medical conditions to have quarter-inch beards. ROA.559. TDCJ now allows *all* male officers to have quarter-inch beards. ROA.581. TDCJ has offered no evidence whatsoever to show that there is a greater safety risk or hardship in allowing Hebrew to keep his beard. *Cf. Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) (Alito, J.) (holding that a no-beard policy with a medical exemption undermined the prison's stated safety rationale).

Third, TDCJ argues that inmates could grab Hebrew's long beard or hair in an attack and thereby incapacitate him. But again, TDCJ's exception for other individuals undermines its stated rationale. For example, TDCJ permits female officers to have long hair for *any* reason, religious or secular. And female officers with long hair face the same safety risk Hebrew allegedly would. For example, TDCJ's expert testified that he has seen a woman attacked when an inmate grabbed her hair. ROA.559. Nonetheless, TDCJ continues to allow women to have long hair. This purely secular exception for some officers undercuts TDCJ's proffered safety concerns in creating an

exception for Hebrew. *Cf. Fraternal Order*, 170 F.3d at 366; *Fulton*, 141 S. Ct. at 1882. Thus, the policy does not even provide "neutral" treatment toward religious observers, much less the "favored treatment" that Title VII demands. *Abercrombie*, 575 U.S. at 775.

With respect to Hebrew's beard, TDCJ has presented no evidence that an officer with a long beard imposes an undue hardship. *Cf. Garner v. Kennedy*, 713 F.3d 237, 247 (5th Cir. 2013) (concluding that TDCJ's no-beard policy for inmates failed under RLUIPA because TDCJ presented "no evidence of any specific incidents affecting prison safety in those systems due to beards"). TDCJ's only evidence belabors the safety concerns of long *hair* but not long *beards*. ROA.556. Even if such safety concerns did exist, TDCJ would still bear the burden of demonstrating the "substantial increased costs" needed to address said concerns. *Groff*, 143 S. Ct. at 2295. Thus, TDCJ has not met its burden to show that it would face an undue hardship if it accommodated Hebrew's religious faith.

## B.

Next, Hebrew's Title VII religious discrimination claim. As the Supreme Court has held, "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Abercrombie*, 575 U.S. at 773. That means an "employer violates Title VII" if the employee "requires an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision" to terminate the employee. *Id*. at 773–74. Notably, this "motivating factor" standard is "broader than the typical but-for causation standard" and encompasses many claims of religious discrimination. *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 378 (5th Cir. 2015). An employer need

not *even know* about the employee's religious practice; it violates Title VII so long as it takes the action "with the *motive* of avoiding the need for accommodating a religious practice." *Abercrombie*, 575 U.S. at 774 (emphasis in original). And motive is especially easy to infer where an employee has submitted a request for an accommodation or where the employer knows of the employee's religious practice. *See ibid.*; *Nobach*, 799 F.3d at 378.

Hebrew's religious practice was more than a motivating factor in TDCJ's termination decision. In fact, it was the *only* factor that led to his discharge. Upon his arrival at the training academy, Hebrew told TDCJ about his religious practice and requested an accommodation. TDCJ told him he would not be able to remain at the training academy so long as he continued to abide by his religious practice. TDCJ placed him on unpaid leave. And then TDCJ fired him for his religious observance of his Nazarite vow. Hebrew has sufficiently proved that TDCJ fired him "because of" his religious practice, so we must reverse the district court's entry of summary judgment. 42 U.S.C. § 2000e-2(a); *see also id.* § 2000e(j); *Abercrombie*, 575 U.S. at 773; *Nobach*, 799 F.3d at 379.

TDCJ argues nonetheless that there is no Title VII violation because its proffered reason for discriminating against Hebrew was neutral and based on legitimate safety concerns. The employer in *Abercrombie* made the same argument, contending "that a neutral policy cannot constitute 'intentional discrimination.'" 575 U.S. at 775. But the Supreme Court rebuffed this argument, holding:

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not to fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice. An employer is surely

> entitled to have, for example, a no-headwear policy as an ordinary matter. But when an applicant requires an accommodation as an aspect of religious . . . practice, it is no response that the subsequent failure . . . to hire was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*Ibid.* (quotations omitted). Likewise, in this case, TDCJ cannot hide behind its "otherwise-neutral policy." *Ibid.* This policy must "give way" to Hebrew's requested accommodation. *Ibid.* Plain and simple, "religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." *Ibid.*

\*　　\*　　\*

For decades, inferior federal courts read a single line from *Hardison* for more than it was worth. The *de minimis* test had no connection to the text of Title VII. *See Small v. Memphis Light, Gas & Water*, 952 F.3d 821, 826–28 (6th Cir. 2020) (Thapar, J., concurring). And by blessing "the denial of even minor accommodation in many cases, "the *de minimis* test made it "harder for members of minority faiths to enter the job market." *Groff*, 143 S. Ct. at 2292 (citing amicus briefs from, *inter alia*, The Sikh Coalition, Union of Orthodox Jewish Congregations of America, and Seventh-day Adventist Church). No more. The decision in *Groff* enables Americans of all faiths to earn a living without checking their religious beliefs and practices at the door.

For the foregoing reasons, we REVERSE the district court's entry of summary judgment and REMAND for proceedings consistent with this opinion.