Filed 9/14/20  De Martin v. La Jolla Pharmaceutical CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DE MARTIN, | D075026 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2017-00009687-CU-WT-CTL) |
| LA JOLLA PHARMACEUTICAL COMPANY, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on August 17, 2020, be modified as follows:

1.     On page 11, after the first full paragraph and before the heading "b. *Procedural Law*," add the following two new paragraphs:

In a petition for rehearing, Plaintiff argues that the opinion fails to analyze potential violations of section 12940, subdivision (k)—which includes as an unlawful employment practice the "fail[ure] to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  For a number of reasons,

Plaintiff forfeited appellate consideration of any potential section 12940, subdivision (k) analysis.  First, Plaintiff did not mention subdivision (k) in his opposition to Defendant's motion in the trial court.  (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 818, fn. 36 [legal theory raised for first time on appeal following grant of summary judgment motion not considered].)  Second, although Plaintiff cited subdivision (k) once in his opening brief on appeal, he presented no legal argument or citation to authority that might relate subdivision (k) to the facts he alleged in his complaint.  (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"]; see Cal. Rules of Court, rule 8.204(a)(1)(B).)  Finally, to the extent Plaintiff may contend that the two citations to subdivision (k) in his reply brief on appeal contain applicable argument or authority, his failure to properly raise the issue in the opening brief forfeits consideration of the issue in reply. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 518 [" ' " 'Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief' " ' "].)

In any event, even if we considered Plaintiff's section 12940, subdivision (k) argument, it would fail as a matter of law.  That is because "courts have required a finding of actual discrimination or harassment under

2

FEHA before a plaintiff may prevail under section 12940, subdivision (k)." (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4., citing *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 283-284, quoted in *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314; accord, *Ugorji v. County of Lake* (N.D. Cal. 2020) __ F.Supp.3d __, __ [2020 WL 3639647 at *9]; see CACI No. 2527, ¶ 2 [under § 12940, subd. (k), plaintiff must prove that he or she "was subjected to [harassment/discrimination/retaliation] in the course of employment"].) Here, as we explain at part III.B., *post*, Plaintiff has not established the requisite proof of discrimination or retaliation.

2.  On page 26, in the first full paragraph, delete the final sentence (including fn. 20), which begins with "To the extent . . . ," and replace it with the following new paragraph:

> To the extent Plaintiff contends that the trial court erred in granting summary judgment on his claim for failure to accommodate (§ 12940, subd. (*l*)(4)), Plaintiff did not meet his burden of establishing error. Initially, he forfeited consideration of the issue by failing to present legal arguments or citations to authority that might relate section 12940, subdivision (*l*)(4), to the facts he alleged in his complaint.[1] (*Cahill*, *supra*, 194 Cal.App.4th at p. 956;

---

[1] In his opening brief on appeal, Plaintiff mentions section 12940, subdivision (*l*)(4) only twice; and in both instances, the citation merely supports quoted language, presumably from the statute. Also, at oral argument, without citing authority, Plaintiff's counsel suggested that, for

3

see Cal. Rules of Court, rule 8.204(a)(1)(B).)  In any event, Plaintiff did not meet his responsive burden of establishing a triable issue of material fact as to any potential claim that Defendant discriminated against him by terminating his employment based on his request to accommodate a religious practice under section 12940, subdivision (*l*)(4). To establish a disparate treatment claim based on a failure to accommodate, Plaintiff was required to show that Rolke "ma[d]e [Plaintiff's] *religious practice*, confirmed or otherwise, a factor in [terminating him]." (*Abercrombie & Fitch, supra*, 575 U.S. at p. __ [135 S.Ct. at p. 2033], italics added.)  As we explained in the context of Plaintiff's discrimination claim under section 12940, subdivision (*l*)(1), Plaintiff did not present evidence, or inferences from evidence, to support a finding that Rolke knew about Plaintiff's religious practice and, therefore, that Rolke made Plaintiff's religious practice a factor in terminating his employment.

The petition for rehearing is denied.

There is no change in judgment.

AARON, Acting P. J.

Copies to:  All parties

---

purposes of a failure to accommodate (§ 12940, subd. (*l*)(4)), the mere act of requesting an accommodation is sufficient to establish protected conduct.

Filed 8/17/20  De Martin v. La Jolla Pharmaceutical CA4/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DE MARTIN, | D075026 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2017-00009687-CU-WT-CTL) |
| LA JOLLA PHARMACEUTICAL COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

The Van Vleck Law Firm, Brian F. Van Vleck and Stuart H. Kluft for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Jesse A. Cripps, Tiffany Phan and Elizabeth A. Dooley for Defendant and Respondent.

Plaintiff Timothy De Martin (Plaintiff) appeals from a judgment in favor of his former employer, defendant La Jolla Pharmaceutical Company (Defendant), following the grant of Defendant's motion for summary judgment.  Alleging that Defendant discriminated against him by

terminating his employment due to his religious creed, Plaintiff sued Defendant in one cause of action under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.; further undesignated statutory references are to this code.)

On appeal, Plaintiff argues that, in response to Defendant's evidence of a legitimate nondiscriminatory reason for termination, he presented sufficient evidence of pretext and/or discriminatory motive to defeat Defendant's summary judgment motion. We disagree and affirm the judgment.

## I. FACTUAL BACKGROUND[2]

Defendant is a biopharmaceutical company. In early 2016, BioPhase Solutions, Inc. (BioPhase), a staffing agency, contacted Plaintiff, who lived in Michigan, regarding a position with Defendant. Plaintiff accepted a position with Defendant and, after moving to San Diego, began a temporary assignment as a senior research associate on March 14, 2016.[3] He reported to Kimberly Bieder.

---

[2] Because this is an appeal from a summary judgment in favor of Defendant, we view the evidence in a light most favorable to Plaintiff, liberally construing Plaintiff's evidence, strictly scrutinizing Defendant's evidence, and resolving evidentiary doubts or ambiguities in Plaintiff's favor. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96-97 (*McDonald*) [appeal from defense summary judgment in a FEHA discrimination case].)

[3] Although Plaintiff considered the position "temp-to-permanent," it was a temporary three-month assignment, and he received no promise that the position would become permanent.

One week later, Plaintiff, who identifies as a Christian, emailed Bieder, stating in part: " 'Friday[, March 25,] is a religious holiday (Good Friday) and I was wondering if it would be okay to request the day off.' "

The next day, Bieder and Plaintiff discussed his March 21 email. During the discussion, Plaintiff also told Bieder that, " 'in addition' to the religious holiday, he 'needed the time on Good Friday to get settled in because of [his] move to California.' " Being "a bit taken back [*sic*] by him asking for a day" off after only a week on the job, Bieder called Plaintiff an " 'idiot,' " a " 'lazy ass,' " and a " 'slacker' " and said in "loud and mean tones" during the conversation: " 'I saw your request. . . . It seems kind of unreasonable, kind of out of place for you to be requesting time off work so soon. . . . How could you put me in this position? You just started working here.' " Nonetheless, at no time did Bieder say Plaintiff could not take the day off and, to the contrary, expressly approved his request. Despite having been given the day off, Plaintiff indicated that he wanted to think more about whether to take off the day.

The following day, March 23, Bieder emailed Sandra Vedrick, Defendant's head of human resources, to report that she (Bieder) had approved Plaintiff's request to take off Friday, March 25, "for this religious day."

Later that afternoon, a group of Defendant's employees, which included Plaintiff, Bieder, James Rolke (Defendant's Vice President of Research and Development and the person responsible for termination decisions for the department in which Plaintiff and Bieder worked), and others, were in Defendant's offices talking about taking time off. Speaking loudly enough for the entire group to hear, in what Plaintiff characterized as sarcasm, Plaintiff

3

said " 'Oh, don't take off for Good Friday though.' "[4] That evening, Rolke called Bieder to better understand the context of Plaintiff's statement, and she confirmed to him that, in fact, she had already given Plaintiff the day off.

The next day, March 24, (the day before Good Friday), Plaintiff initiated a conversation with Bieder regarding her comments to him two days earlier when she approved his request to take the day off. Plaintiff explained that he " 'didn't appreciate a lot of the things' " that Bieder had said about him in their prior meeting.

Rolke, who was in the next room at the time, overheard Plaintiff and Bieder. Although what Rolke heard was "muffled," he described the exchange as "an argument" between Plaintiff and Bieder. Just as Bieder left the meeting with Plaintiff, Rolke saw Bieder, who "was practically near breaking down into tears." In response to Rolke's inquiry as to the cause of Bieder's apparent upset, Bieder explained to Rolke that " '[Plaintiff] was badgering me about taking a day off, which he was already given.' "

Within minutes, Rolke called Vedrick (in human resources) with Bieder still present. Rolke instructed Vedrick to have Plaintiff terminated at the end of that workday. In response to Vedrick's inquiry as to why, Rolke explained: " 'Because [Plaintiff] had disrespectful behavior' ": "One, . . . he had made a snarky comment about getting a day off, and . . . two, he was arguing with the supervisor [(Bieder)] within the first week of being hired . . . to the point of where [she] was practically in tears." Defendant contacted

---

[4]     Rolke testified that what he heard Plaintiff say was, " 'Good luck getting a day off.' " Given the appropriate standard on appeal (*McDonald*, *supra*, 45 Cal.4th at pp. 96-97), for purposes of this appeal, we consider *Plaintiff's* recollection of what he said rather than *Rolke's* recollection of what he heard.

BioPhase (the staffing agency), and on that evening, Thursday, March 24, Plaintiff received a telephone call from BioPhase informing him that his placement with Defendant was terminated due to his " 'bad attitude.' "

The following Monday, March 28, Plaintiff sent Rolke an email in which he (Plaintiff) complained about what had happened the prior week after his "request to take Friday off work." Throughout the one full page single-spaced email, Plaintiff did not once mention religion or Good Friday, instead describing the reason that he asked for the time off as follows: "[M]y request to take the day off on Friday [was] to help get me set up so I can work for you better [*sic*]." Rolke immediately forwarded Plaintiff's email to Vedrick, advising and clarifying: "[Plaintiff] wasn't let go because he wanted the Friday off. He was let go because he was argumentative and disrespectful to his supervisor during his first week" of temporary work for Defendant.

## II. PROCEDURAL BACKGROUND

In March 2017, Plaintiff filed a "complaint for religious discrimination in violation of [the FEHA]," in which he alleged one cause of action for "religious discrimination" against Defendant and BioPhase.[5] (Some capitalization omitted.) More specifically, Plaintiff claimed that, in violation of specified provisions of the FEHA and related regulations, Defendant "decided to terminate Plaintiff due to his actual and perceived religious beliefs, as retaliation for his opposition to [Bieder's] religious discrimination and harassment, and as a preemptive way to deny him the accommodation of taking Good Friday as a day off from work."

---

[5] BioPhase moved for and was granted summary judgment in June 2018. BioPhase is not a party to this appeal.

5

Defendant moved for summary judgment on the basis that Plaintiff could not produce evidence of pretext or discrimination sufficient to raise a triable issue of material fact. Plaintiff opposed the motion, Defendant replied to the opposition, Plaintiff filed a surreply to the reply, and the trial court entertained oral argument. By written order, the court granted Defendant's motion, ruling that Defendant established a nondiscriminatory reason for the termination of employment—i.e., Plaintiff's bad attitude—and Plaintiff did not meet his responsive burden of establishing a triable issue of material fact as to whether Defendant's stated reason was pretextual. As part of its order, the court also ruled that Plaintiff's cause of action for discrimination based on religious creed (§ 12940, subd. (*l*)) did not sufficiently plead a claim for retaliation (§ 12940, subd. (h)) or harassment (§ 12940, subd. (j)).

The court entered judgment in October 2018, and Plaintiff timely appealed.

## III. DISCUSSION

On appeal, Plaintiff argues: (1) Defendant failed to provide him with a statutorily required religious accommodation; (2) in response to Defendant's evidence of a nondiscriminatory reason for terminating his employment, Plaintiff met his burden of establishing a triable issue of material fact as to whether Defendant's stated reason was pretextual; and (3) Plaintiff sufficiently pled a claim for retaliation.[6] As we explain, Plaintiff has not met his burden of establishing reversible error: (1) Defendant presented a legitimate, nondiscriminatory reason for terminating Plaintiff's employment; (2) Plaintiff did not meet his responsive burden of presenting evidence, or inferences from evidence, of a pretext or a discriminatory or retaliatory

---

[6] On appeal, Plaintiff abandoned his claim for harassment.

6

motive or intent for the termination; and (3) even if Plaintiff sufficiently pled retaliation, the claim does not survive Defendant's summary judgment motion.

A.      *Summary Judgment Under the FEHA*

      1.      *General Standards of Appellate Review*

Because the trial court's judgment is presumed correct, the appellant has the burden of affirmatively establishing reversible error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 252 [appeal from defense summary judgment in FEHA action (*Claudio*).)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers[.]"  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*) [FEHA age discrimination claim]; accord, *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

A defendant is entitled to a summary judgment on the basis that the "action has no merit" (Code Civ. Proc., § 437c, subd. (a)) only where the court is able to determine from the evidence presented that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (Code Civ. Proc., § 437c, subd. (c)).  A cause of action "has no merit" if one or more of the elements of the cause of action cannot be established or an affirmative defense to the cause of action can be established as a matter of law.  (Code Civ. Proc., § 437c, subd. (o).)

Thus, the moving defendant has the ultimate burden of *persuasion*[7] that one or more elements of the cause of action at issue "cannot be

---

[7]    The burden of persuasion, sometimes referred to as the burden of proof, means the obligation of a party "to establish by evidence a requisite degree of

established" or that "there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at pp. 849, 850, 853-854.) In attempting to achieve this goal, the defendant has the initial burden of *production*[8] to make a prima facie showing of the nonexistence of any triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) If the defendant meets this burden, then the burden of *production* shifts to the plaintiff to establish the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at pp. 850-851.)

    2.    *The FEHA*

        a.    *Substantive Law*

At issue in this appeal is the FEHA's prohibition on an employment practice that discriminates based on an employee's religious creed, based on a failure to accommodate a request for an accommodation of an employee's religious belief or observance, and based on retaliation against an employee's opposition to these specified practices. (§ 12940.[9]) As applicable to Plaintiff's claims, section 12940 includes as unlawful employment practices:

> "For an employer, because of the . . . religious creed . . . of any person, . . . to discharge the person from employment

---

belief concerning a fact in the mind of the trier of fact or the court." (Evid. Code, § 115.)

[8]     The burden of production means "the obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." (Evid. Code, § 110.)

[9]     Plaintiff's cause of action arose out of activities that took place in March 2016. The portions of the subdivisions of section 12940 at issue in this appeal have not changed since 2016. (Compare Stats. 2015, ch. 122, § 2, eff. Jan. 1, 2016, with Stats. 2018, ch. 955, § 2, eff. Jan. 1, 2019.)

. . . or to discriminate against the person in . . . or privileges of employment" (§ 12940, subd. (a));

"For an employer . . . to discharge a person from employment . . . or to discriminate against a person in . . . privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship . . . . Religious belief or observance, as used in this section, includes, but is not limited to, observance of a Sabbath or other religious holy day or days, reasonable time necessary for travel prior and subsequent to a religious observance" (§ 12940, subd. (*l*)(1));

"For an employer . . . to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under [section 12940, subdivision (*l*)], regardless of whether the request was granted" (§ 12940, subd. (*l*)(4)); and

"For any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]" (§ 12940, subd. (h)).

For purposes of section 12940, " '[r]eligious creed,' 'religion,' 'religious observance,' 'religious belief,' and 'creed' include all aspects of religious belief, observance, and practice, including religious dress and grooming practices." (§ 12926, subd. (q).) In addition, " '[r]eligious creed' includes any traditionally recognized religion as well as beliefs, observances, or practices, which an individual sincerely holds and which occupy in his or her life a place of importance parallel to that of traditionally recognized religions." (Cal. Code Regs., tit. 2, § 11060.)

9

Under section 12940, subdivision (*l*), there are three elements to a prima facie case for religious creed discrimination based on disparate treatment:[10] "the employee sincerely held a religious belief; the employer was aware of that belief; and the belief conflicted with an employment requirement." (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1011 (*Gemini Aluminum*).) In opposing Defendant's summary judgment motion, Plaintiff argued only discrimination based on disparate treatment.

By contrast, where the employee's disparate treatment claim is that the employer failed to accommodate a religious practice, the employee does not have to show " 'actual knowledge' of the [employee's] need for an accommodation"; the employee "need only show that his need for an accommodation was a motivating factor in the employer's decision." (*EEOC v. Abercrombie & Fitch Stores, Inc.* (2015) 575 U.S. 768, __ [135 S.Ct. 2028, 2032] (*Abercrombie & Fitch*) [under title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[11]].) Thus, to prevail on a failure to accommodate claim, the employee must show: The employee held a bona fide religious belief, the practice of which conflicted with an employment duty; the employee's religious belief or religious practice was a "motivating factor" in the employer's decision; and the employer took adverse action (e.g., discharge

---

10    " 'Disparate treatment' is *intentional* discrimination against one or more persons on prohibited grounds" as opposed to " 'disparate impact,' " which focuses on the adverse effect of a "*facially neutral*" employment practice. (*Guz, supra*, 24 Cal.4th at p. 354, fn. 20; see CACI No. 2500, Directions for Use.)

11    "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz, supra*, 24 Cal.4th at p. 354.)

or refusal to accommodate) because of the employee's inability to fulfill the job requirement. (*Abercrombie & Fitch*, at p. __ [pp. 2032-2033].) In short, "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions." (*Id.* at p. __, [p. 2033].)

Finally, "to establish a prima facie case of retaliation under the FEHA, [the employee] must show (1) he or she engaged in a 'protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) These elements of a section 12940, subdivision (h) claim for retaliation under the FEHA " 'are substantially the same as those for disparate treatment except that instead of having to show that the action was motivated by animus toward the plaintiff as a member of the protected class, the plaintiff must show that the motive was retaliatory animus.' " (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 941-942 (*Cornell*).)

b. *Procedural Law*

An employer may move for summary judgment against a discrimination cause of action with evidence of a legitimate, nondiscriminatory reason for the adverse employment action. (*Guz*, *supra*, 24 Cal.4th at p. 357.) Such a reason is one that is unrelated to prohibited bias and that, if true, would preclude a finding of discrimination. (*Id.* at p. 358.) "The employer's evidence must be sufficient to allow the trier of fact to conclude that it is more likely than not that one or more legitimate, nondiscriminatory reasons were the sole basis for the adverse employment

11

action." (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158 (*Featherstone*).)

By presenting evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the employer shifts the burden to the employee to present evidence that the employer's decision was motivated at least in part by prohibited discrimination.[12] (*Guz*, *supra*, 24 Cal.4th at pp. 353, 357.) The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the employee's evidence must be in order to create a reasonable inference of a discriminatory motive. (*Id.* at p. 362 & fn. 25 [a plaintiff's "circumstantial evidence of intentional discrimination, even if fully credited and technically sufficient to establish a prima facie case, raises, at most, a weak inference of prohibited bias"].) Although the employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally (see fn. 1, *ante*), it " 'remains subject to careful scrutiny.' " (*Featherston*, *supra*, 10 Cal.App.5th at p. 1159.) The employee's " 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do

---

[12] This procedure, often referred to as the *McDonnell Douglas* test or formula, is derived from the three-stage burden-shifting procedure established by the United States Supreme Court for use *at trial* in cases involving claims (like Plaintiff's) of employment discrimination based on disparate treatment. (*Guz*, *supra*, 24 Cal.4th at pp. 354, 357, citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.) At trial, a plaintiff has the initial burden to establish a prima facie case of employment discrimination. (*Guz*, at p. 354.) By contrast, in a summary judgment motion, the "moving defendant has the initial burden to show that a cause of action has no merit (Code Civ. Proc., § 437c, subd. (p)(2))" and, therefore, has "the initial burden to present evidence that its decision was motivated solely by legitimate, nondiscriminatory reasons." (*Featherstone*, *supra*, 10 Cal.App.5th at p. 1159, fn. 4.)

12

uncorroborated and self-serving declarations' "; instead, the employee's evidence "must relate to the motivation of the decision makers and *prove, by nonspeculative evidence*, 'an actual causal link between prohibited motivation and termination.' " (*Ibid.*, italics added.)

To show that the employer's reason for termination is pretextual,[13] the employee " ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' " ' " and hence infer ' "that the employer did not act for [the asserted] nondiscriminatory reasons." ' " (*Featherstone, supra*, 10 Cal.App.5th at p. 1159.) "[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct." (*Guz, supra*, 24 Cal.4th at p. 358.) The FEHA " ' " 'addresses discrimination.' . . . " '[It] is not a shield against harsh treatment at the workplace.' " ' . . . ' "[T]he mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action" ' " for purposes of the FEHA. (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 735 (*Doe*); see *Diego, supra*, 15 Cal.App.5th at p. 355 ["even if otherwise unfair," an employment decision not based on "protected status" under the FEHA is not actionable].) "While the

---

[13] Evidence is sufficient to find pretext if it establishes " ' "that the employer's asserted justification is false[.]" ' " (*Diego v. City of Los Angeles* (2017) 15 Cal.App.5th 338, 351 (*Diego*); see also *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388 [pretextual evidence establishes "that the presumptively valid reason for the employer's action was in fact a coverup"]; *O'Regan v. Arbitration Forums, Inc.* (7th Cir. 2001) 246 F.3d 975, 983 ["Pretext 'means a dishonest explanation, a lie rather than an oddity or an error' "].)

objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a motive to discriminate illegally. Thus, 'legitimate' reasons . . . in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." (*Guz*, at p. 358, italics & citations omitted.)

Like FEHA discrimination claims, at trial FEHA retaliation claims are subject to the same *McDonnell Douglas* burden-shifting framework. (*Cornell*, *supra*, 18 Cal.App.5th at p. 942.) Thus, where the employee is able to establish a prima facie case, the burden is on the employer to identify "a legitimate, nonretaliatory reason for the adverse employment action"; and if the employer meets this standard, then "the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) In summary judgment proceedings, FEHA retaliation claims are also treated the same as FEHA discrimination claims: Where " ' "the employer presents admissible evidence either that one or more of [the employee's] prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory [or nonretaliatory] factors, the employer will be entitled to summary judgment unless the [employee] produces admissible evidence which raises a triable issue of fact material to the [employer's] showing." ' " (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344 (*Arteaga*), italics omitted.)

B. *Analysis*

As we explain, the trial court properly granted summary judgment. Defendant presented a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff did not meet his responsive burden of

14

establishing either a pretext or a discriminatory or retaliatory motive for the termination.

     1.     *Defendant Presented a Legitimate, Nondiscriminatory Reason for Terminating Plaintiff's Employment*

For purposes of determining whether an employer's allegedly nondiscriminatory reason is "legitimate," *Guz* requires that it must be one that is "*facially unrelated to prohibited bias,* and which, if true, would thus preclude a finding *of discrimination.*"  (*Guz, supra,* 24 Cal.4th at p. 358.)

Here, Defendant presented evidence that, *after* having been given the day off, Plaintiff made a "snarky comment" and was "very disrespectful." This evidence included two incidents, both of which occurred at a time when Plaintiff had been employed by Defendant for less than two weeks.  First, Plaintiff made a sarcastic comment to a roomful of other employees, including Rolke, to the effect that, when it comes to taking time off from work, just " 'don't take off for Good Friday[.]' "  Second, the next day, Rolke overheard what he described as "an argument" between Plaintiff and Bieder, Plaintiff's supervisor.  Bieder "was practically near breaking down into tears" after Plaintiff confronted her, "badgering [her] about taking a day off, which he was already given.' "  Based on these incidents, Defendant terminated Plaintiff "for having a 'bad attitude.' "

In addition to the evidence of bad attitude, the uncontradicted evidence is that Rolke was the person responsible for termination decisions in the department in which Plaintiff worked, Rolke made the decision to terminate Plaintiff's employment, and at the time he made that decision Rolke was unaware that Plaintiff had requested the day off to observe Good Friday.[14]

---

[14]    In support of its summary judgment motion, Defendant included the following undisputed material fact, fully supported by cited evidence from Rolke's deposition:  "At the time Rolke made the decision to terminate

This evidence establishes the requisite legitimate, nondiscriminatory reason for Defendant's decision to terminate Plaintiff's employment. The reason is unrelated to prohibited acts under section 12940 and, if true, would preclude a finding of discrimination.

Plaintiff argues that "Rolke's claimed ignorance strains credulity in light of his many meetings and conversations with Bieder and Vedrick on the subject." However, "strain[ing] credulity" is not the standard; Plaintiff was required to cite to "*nonspeculative evidence*" that establishes " 'an actual causal link between prohibited motivation and termination.' " (*Featherstone*, *supra*, 10 Cal.App.5th at p. 1159.) Plaintiff's " 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact.' " (*Ibid.*)

Relying on *Reeves v. Safeway Stores* (2004) 121 Cal.App.4th 95 [retaliation claim, which requires a showing " 'that the offensive act would not have happened *but for*' " the discrimination], Plaintiff further suggests that, even if Rolke did not have knowledge of the religious origin of Plaintiff's request, "it does not *excuse* [Defendant's] failure as an employer to provide a legally mandated accommodation . . . without discrimination or retaliation." However, *Reeves* is distinguishable. As Plaintiff acknowledges, a defense of "the employer's ignorance" only applies where " 'it extends to *all* corporate actors who contributed materially to an adverse employment decision.' "

[Plaintiff], he was unaware of the reason (Good Friday) that [Plaintiff] had requested the day." In support of his opposition to the motion, Plaintiff's response to this material fact was: "Disputed. Rolke was made aware of the reason [Plaintiff] requested Friday, March 25, 2016, off from work." However, the evidence on which Plaintiff relied to dispute this fact—i.e., portions of the deposition testimony from Bieder, Rolke and Vedrick— contains neither direct nor circumstantial evidence (or inferences) to support Plaintiff's dispute of Defendant's proffered material fact.

16

(Quoting *Reeves*, at p. 109.)  That is because "a defendant does not conclusively negate the element of causation by showing only that some responsible actors, but not all, were ignorant of the occasion for retaliation".  (*Ibid.*)  In *Reeves*, the ultimate decisionmaker "was not the only actor who materially contributed to plaintiff's discharge"; to the contrary, she merely "ratifi[ed]" the adverse employment recommendation made by a person with knowledge of the plaintiff's prior complaints about incidents of discrimination in the workplace.  (*Id.* at p. 110.)  Here, on this record, Rolke was the sole decisionmaker, and he had no knowledge of any religious basis for Plaintiff's request for the day off.

Likewise, Plaintiff's reliance on *Gemini Aluminum, supra*, 122 Cal.App.4th 1004 is misplaced.  There, the plaintiff's supervisor "knew [the plaintiff] was a Jehovah's Witness and wanted the days off to attend his annual religious convention."  (*Id.* at p. 1015.)  In contrast to our case, however, in *Gemini Aluminum* the plaintiff's supervisor was not only "the person responsible for taking the [plaintiff's] request to management," but he "was also a member of the management committee which would grant or deny the request."  (*Id.* at pp. 1009-1010; see *id.* at p. 1015.)

In the present case, the only evidence is that *Rolke*—not Bieder, Vedrick, or anyone else—"was responsible for termination decisions" in the department to which Plaintiff had been assigned.[15]  Had Plaintiff intended to apply a vicarious liability theory to establish discrimination, at a minimum

---

[15]    During cross-examination of Rolke at his deposition, Rolke testified that, for his department, "All decisions to terminate are made by me."  There is no *evidence* either that Bieder or Vedrick told Rolke about the religious reason for Plaintiff's requested day off or that Bieder or Vedrick had any role in Rolke's decision to terminate Plaintiff's employment.

he would have had to have shown that Bieder was Defendant's agent for purposes of terminating Plaintiff's employment. (See *Gemini Aluminum*, *supra*, 122 Cal.App.4th at p. 1015 [discussion of "agen[cy] for purposes of vicarious liability for unlawful discrimination"].) In *Gemini Aluminum*, for example, the "decision makers were the members of the management committee," and the employee's supervisor who had knowledge of the alleged discrimination at the time of the adverse employment decision "was a member of that committee." (*Ibid.*) Because Plaintiff has made no similar showing here, there is no basis on which Plaintiff can claim that, for purposes of Defendant's decision to terminate Plaintiff's employment, Bieder's (or Vedrick's) knowledge either should be imputed to Defendant or is a basis on which to conclude that Bieder (or Vedrick) had a duty to disclose information to Rolke regarding the allegedly religious nature of Plaintiff's request.

2. *Plaintiff Did Not Meet His Responsive Burden of Establishing a Pretext or Discriminatory Motive for the Termination*

We now turn to Plaintiff's presentation to determine whether he met his responsive burden. Our inquiry is whether there is "evidence supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions." (*Guz, supra,* 24 Cal.4th at p. 361, italics omitted.) Thus, as applicable here, we consider whether Plaintiff has presented sufficient evidence—or "inferences reasonably deducible from the evidence"[16] (Code Civ. Proc., § 437c,

_____

[16] Plaintiff may rely on inferences from direct evidence or from circumstantial evidence. (See *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 ["the law generally makes no distinction between circumstantial and direct evidence[;] . . . both types of evidence can be persuasive in discrimination cases"]; *Desert Palace, Inc. v. Costa* (2003) 539 U.S. 90, 99 [Title VII "requires a plaintiff to prove his case . . . using 'direct or circumstantial evidence' "].)

subd. (c))—to allow a factfinder at trial to conclude that Defendant intentionally discriminated against him based on religious creed in violation of section 12940.

### a.   *Direct Evidence*

According to his opening brief on appeal, Plaintiff contends that the record contains direct evidence of discrimination, relying on:  (1) "Bieder's hostility toward Plaintiff's request [for the day off]"; and (2) "Rolke's admission that termination was based on Plaintiff's protected conduct being 'disrespectful' and demonstrating a 'bad attitude.' "  (Some initial capitalization omitted.)  We disagree.

With regard to Bieder's alleged hostility, Plaintiff focuses on Bieder having "called him 'lazy,' a 'dumbass' " and having "told him his request was 'a sloppy choice.' "[17]  Plaintiff then argues that, because Bieder was "a

---

" '[D]irect evidence' means evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact."  (Evid. Code, § 410.)  In the context of a FEHA discrimination case, "[d]irect evidence is evidence which, if believed, proves the fact of discriminatory animus *without inference or presumption.*  Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue."  (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 550 (*DeJung*), discussed in the text, *post*.)

The term "circumstantial evidence" emphasizes the effect of the evidence—i.e., the necessity of drawing inferences from it.  "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action."  (Evid. Code, § 600, subd. (b).)

[17]   In the next sentence of his brief, Plaintiff tells us that there is direct evidence that "Bieder also told Rolke that she believed Plaintiff was being untruthful about *the religious purpose of his request*."  (Italics added.)  Because Plaintiff failed to provide a record reference for this assertion, we disregard it.  (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014,

supervisor who was involved in the adverse employment action," this direct evidence establishes that "unlawful discrimination played a role in the decision." The problem with Plaintiff's approach is that the record does not support the premise for Plaintiff's argument—namely, that Bieder "was involved in the adverse employment action." To the contrary, as we explained at part III.B.1., *ante*, the record establishes that *only* Rolke made the decision to terminate Plaintiff's employment. (See fn. 14 and related text, *ante*.) In addition, despite using language that Plaintiff finds offensive, Bieder approved Plaintiff's request in its entirety. While Bieder's comments may evidence rude behavior or a personal animosity, neither is evidence of religious discrimination in violation of the FEHA. (See *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 295 (*Lyle*) ["the FEHA is 'not a "civility code" ' "][18]; *Doe*, *supra*, 43 Cal.App.5th at p. 735 [the FEHA

---

1079; Cal. Rules of Court, rule 8.204(a)(1)(C).) In any event, based on our own review of the record, we are satisfied that, for purposes of opposing Defendant's motion, Plaintiff was unaware of such evidence.

First, in his response to Defendant's undisputed fact No. 29, Plaintiff agreed that, in discovery responses, he did not identify *Rolke* as "a person having 'knowledge' of 'any ADVERSE EMPLOYMENT ACTIONS' taken against [Plaintiff] which 'were discriminatory.' "

Additionally, in disputing Defendant's undisputed fact No. 35, in part Plaintiff told the trial court: "[Rolke] based his decision [to terminate Plaintiff] on three conversations he had with Bieder, one Wednesday morning, another Wednesday evening, and the third occurring Thursday morning. Rolke also convened on a phone call with [Vedrick] and Bieder regarding the decision to terminate." In support of his response, Plaintiff cited portions of deposition testimony from Rolke, Bieder, and Vedrick. None of that testimony contains evidence, or any inference from the testimony, that Bieder told Rolke that Plaintiff's request for a day off had a "religious purpose"—as Plaintiff tells us in his appellate brief.

18    In *Lyle*, our Supreme Court recognized that "the use of sexually coarse and vulgar language in the workplace can . . . constitute *harassment* because

20

"is not a shield against harsh treatment at the workplace"]; *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1157 (*Slatkin*) [where a personal grudge constitutes a "legitimate, nondiscriminatory reason" for an adverse employment decision, the plaintiff does not have a claim for discrimination]; *Guz, supra,* 24 Cal.4th at p. 358 ["if nondiscriminatory, [the employer]'s true reasons need not necessarily have been wise or correct"].)

Plaintiff's reliance on *DeJung, supra,* 169 Cal.App.4th 533 is misplaced. In *DeJung,* a former part-time court commissioner brought a FEHA age discrimination case against the Sonoma County Superior Court. (*Id.* at p. 538.) The court's executive committee made the decision to appoint a fulltime commissioner and established a screening panel and an interview panel for the recruitment process. (*Id.* at p. 541.) During the time at which the executive committee decided not to rehire the plaintiff on a part-time basis and the time at which the court offered the fulltime position to a younger man, the court's presiding judge—who was also chair of the executive committee—told the plaintiff and others that the court was looking to hire someone younger than the plaintiff.[19] (*Id.* at pp. 541-542.) In support of its motion for summary judgment, the defendant court argued that the presiding judge's comments, "if made, did not taint its decisionmaking

---

of sex . . . depending on the circumstances." (*Lyle, supra,* 38 Cal.4th at p. 295, italics added.) We need not consider whether Bieder's actions might constitute harassment because of religion, since Plaintiff here expressly withdrew his claim for harassment.

[19]     At the time of the hiring decision, 12 candidates, including the plaintiff, had been interviewed. (*DeJung, supra,* 169 Cal.App.4th at p. 541.) The plaintiff was 64 years old, the other applicants were between the ages of 37 and 62, and the applicant who was offered the position was 43 years old. (*Id.* at pp. 541, 542, & fn. 4.)

process because the hiring decision involved a multi-level process conducted by multiple individuals." (*Id*. at pp. 550-551.) The Court of Appeal rejected this argument, ruling that, although "[the plaintiff] need not demonstrate that every individual who participated in the failure to hire him shared discriminatory animus in order to defeat a summary judgment motion, . . . [by] showing that *a significant participant in an employment decision* exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory." (*Id*. at p. 551, italics added.) Very simply, in *DeJung*, the person who allegedly "exhibited discriminatory animus" was the defendant court's presiding judge who also chaired the court's executive committee (*id*. at pp. 541-542); whereas, in contrast, in the present case, there is no evidence that Bieder had any role in the decision to terminate Plaintiff's employment.

For the foregoing reasons, Plaintiff did not meet his responsive burden of producing direct evidence to establish the existence of a triable issue of material fact as to whether Defendant intentionally discriminated against him based on religious creed in violation of section 12940. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at pp. 850-851.)

b.     *Circumstantial Evidence*

Plaintiff argues that certain circumstantial evidence supports *an inference* of Defendant's unlawful motivation or pretext. An inference is "a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) As applicable here, "[s]peculation . . . is not evidence" (*Aguilar*, *supra*, 25 Cal.4th at p. 864), and an appellant opposing summary judgment "cannot rely on 'speculation, conjecture, imagination, or guesswork' " (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th

22

411, 418). Moreover, just as at trial, on summary judgment the inferences a plaintiff relies on must satisfy the "more likely than not" evidentiary standard. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 487.)

Here, Plaintiff relies on the following circumstantial evidence to support inferences of discrimination: (1) Defendant's "vague and subjective 'bad attitude' rationale"; (2) Defendant's "biased and defective fact finding"; and (3) " the close timing between [Plaintiff's] protected conduct and [his] termination."[20] As we explain, Plaintiff did not meet his responsive burden.

---

[20] In response to our request for supplemental briefing from the parties, Plaintiff argues that we should infer that Rolke knew Plaintiff had requested the day off *for religious reasons* from his statement to a group of employees, including Rolke, one day before the termination, " 'Oh, don't take off *for Good Friday* though.' " (Italics added.) We reject Plaintiff's contention.

First, Plaintiff did not argue *this inference* in his appellate briefing. Because the judgment is presumed correct (*Claudio, supra,* 134 Cal.App.4th at p. 252), our review on appeal " 'is limited to issues which have been adequately raised and supported in [the appellant's] brief.' " (*Palm Springs Villas II Homeowners Assn., Inc. v. Parth* (2016) 248 Cal.App.4th 268, 279, fn. 4; accord, *Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1519; *Claudio,* at p. 230.) Any other procedure would be "manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy." (*North Coast Bus. Park v. Nielsen Constr. Co.* (1993) 17 Cal.App.4th 22, 29.)

Moreover, in his discovery responses, which formed the basis of an undisputed material fact in the summary judgment proceedings, Plaintiff "did not identify Rolke as a person having 'knowledge' of 'any ADVERSE EMPLOYMENT ACTIONS' taken against [Plaintiff] which 'were discriminatory.' " Having taken this position, Plaintiff cannot now argue that, from the evidence that Rolke thought Plaintiff's statement was "snarky" and "disrespectful," we should infer that Rolke—and, thus, Defendant—had a discriminatory motive when terminating Plaintiff's employment. Had Plaintiff in fact relied on the inference from this evidence, he should have included it with his summary judgment opposition in the trial court and attempted to amend his discovery responses to identify Rolke as someone with knowledge of the allegedly discriminatory termination of employment.

First, Plaintiff argues that, because Defendant's expressed basis for the termination (i.e., Plaintiff's "bad attitude") was " 'excessively subjective and vague,' " he has not been given a " 'reasonable opportunity to rebut' " Defendant's showing of a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. (Quoting *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 75, internal quotation marks omitted.) Initially, by concluding that Defendant met its initial burden in presenting a legitimate, nondiscriminatory reason for terminating Plaintiff's employment (see pt. III.B.1., *ante*), we have already determined that Plaintiff's "bad attitude"—i.e., Defendant's stated reason for termination—is neither excessively subjective nor vague. In any event, since Plaintiff's premise is faulty, his conclusion necessarily fails. Here, Defendant has been consistent and clear: The two bases for Rolke concluding that Plaintiff demonstrated a bad attitude are (1) Plaintiff's sarcastic comment in a room of other employees, and (2) Plaintiff's argument with his direct supervisor (Bieder) that left her practically in tears. Such behavior by Plaintiff *does* show a bad attitude, and describing it as such is neither excessively subjective nor vague.

Plaintiff next suggests that, where an employer conducts an investigation or otherwise assesses potential employee misconduct, a "defective fact finding" investigation "may itself support an inference of discrimination." More specifically, Plaintiff argues that, in summary judgment proceedings, the burden does not shift to the employee to establish pretext " 'until the employer shows that the procedure by which the employee was terminated was validly and fairly devised and administered to serve a legitimate business purpose.' " (Quoting *Gemini Aluminum, supra*, 122 Cal.App.4th at p. 1022.) Again, we have already concluded that Defendant

24

made a sufficient showing to shift the burden to Plaintiff to establish pretext. (See pt. III.B.1., *ante*.)  In any event, Plaintiff cites no authority that required Defendant to conduct an investigation, and our independent research has not disclosed any.

Finally, Plaintiff argues that the " 'close temporal proximity' " between his argument with Bieder (over what he characterizes as his "objection to [her] abusive response to his original request") and the termination of his employment later that same day "establishes an inference that Plaintiff's termination was caused by his protected statements to Bieder."  (Quoting *Hodgens v. General Dynamics Corp.* (1st Cir. 1998) 144 F.3d 151, 168.)  Yet again, because here "the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination" (see pt. III.B.1., *ante*), "temporal proximity alone is not sufficient to raise a triable issue as to pretext." (*Arteaga*, *supra*, 163 Cal.App.4th at p. 353; accord, *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 94 ["a mere temporal relationship between an employee's protected activity and the adverse employment action, while sufficient for the plaintiff's prima facie case, cannot create a triable issue of fact if the employer offers a legitimate, nonretaliatory reason for the adverse action"].)  In any event, as we explained *ante*, although "Bieder's abusive response to [Plaintiff's] original request" may evidence rude behavior or a personal animosity, it does not evidence religious discrimination in violation of the FEHA.  (See *Lyle*, *supra*, 38 Cal.4th at p. 295 ["the FEHA is 'not a "civility code" ' "]; *Doe*, *supra*, 43 Cal.App.5th at p. 735 [the FEHA does not preclude "harsh treatment at the workplace"]; S*latkin*, *supra*, 88 Cal.App.4th 1147, 1157 [a personal grudge will not support a claim for discrimination]; *Guz*, *supra*, 24 Cal.4th at p. 358

[the employer's "true reasons need not necessarily have been wise or correct"]; see pt. III.B.2.a., *ante*.)

For the foregoing reasons, Plaintiff has not established reversible error. With regard to the issue whether Defendant intentionally discriminated against him based on religious creed in violation of section 12940, subdivision (*l*)(1), Plaintiff did not meet his responsive burden of producing circumstantial evidence to establish the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at pp. 850-851.)  To the extent Plaintiff contends that the trial court erred in granting summary judgment as to his claim for failure to accommodate (§ 12940, subd. (*l*)(4)), for all of the reasons that Plaintiff did not establish reversible error as to the claim of discrimination (§ 12940, subd. (*l*)(1)), summary judgment was also appropriate as to a claim for failure to accommodate (§ 12940, subd. (*l*)(4)).[21]

In short, Plaintiff's " 'suspicions of improper motives . . . primarily based on conjecture and speculation' are not sufficient to raise a triable issue of fact to withstand summary judgment." (*Kerr v. Rose* (1990) 216 Cal.App.3d 1551, 1564 [wrongful termination].)

---

[21]    At oral argument, Plaintiff's counsel suggested that, for purposes of a failure to accommodate (§ 12940,subd. (*l*)(4)), the mere act of requesting an accommodation is sufficient to establish protected conduct.  We disagree. As we explained at part III.A.2.a. *ante*, to establish a disparate treatment claim based on a failure to accommodate a religious practice, Plaintiff was required to show that Rolke "ma[d]e [Plaintiff's] *religious practice*, confirmed or otherwise, a factor in [terminating him]." (*Abercrombie & Fitch, supra*, 575 U.S. at p. __ [135 S.Ct. at p. 2033], italics added.)

26

3. *To the Extent Plaintiff Pled a Claim for Retaliation, the Grant of Summary Judgment Applies to It, and Plaintiff Has Not Established Reversible Error*

The trial court granted Defendant's summary judgment motion, which Defendant directed *to the complaint*, not to any specific claim. In explaining its reasoning, in part the court ruled that, in Plaintiff's "single cause of action for discrimination based upon religion[,] Plaintiff did not plead a cause of action for retaliation . . . under FEHA, Gov. Code, § 12940[, subd. ](h)."

On appeal, the parties disagree as to whether the complaint contains sufficient allegations to support a claim for retaliation (§ 12940, subd. (h)), in addition to a claim for discrimination or failure to accommodate (§ 12940, subd. (*l*)). We will assume without deciding that the complaint adequately alleges a claim for retaliation.[22] Nonetheless, as we explain, Plaintiff has not met his burden of establishing reversible error.

In an appeal from a summary judgment, "we review 'the ruling, not the rationale' "; thus, we may affirm on any basis supported by the record and the law. (*Skillin v. Rady Children's Hospital – San Diego* (2017) 18 Cal.App.5th 35, 43.) Applying this standard, we conclude that the trial court correctly ruled that Defendant was entitled to summary judgment *on the complaint—* including the (assumed) claim for retaliation.

One of the elements of a prima facie case of retaliation under the FEHA is "a causal link . . . between the [employee's] protected activity and the employer's action." (*Yanowitz, supra*, 36 Cal.4th at p. 1042.) To do this, " 'the plaintiff must show that the motive was retaliatory animus.' " (*Cornell, supra*, 18 Cal.App.5th at pp. 941-942.) "Like FEHA discrimination claims,

---

[22] Proceeding with this assumption, we deny as unnecessary Plaintiff's request to amend the complaint.

27

FEHA retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework." (*Id.* at p. 942.)

As we explained at part III.B.2., *ante*, because neither direct nor circumstantial evidence supports a finding that Rolke knew of the religious nature of his request for the day off, Plaintiff did not meet his responsive burden of producing evidence to establish the existence of a triable issue of material fact as to whether Defendant intentionally discriminated against him. For the same reason, Plaintiff has not met, and cannot meet, his responsive burden of producing evidence that Defendant's motive in terminating Plaintiff's employment was retaliatory animus. The decision to terminate the employment was a decision made solely by Rolke. (See fn. 14, *ante*.)

Thus, Plaintiff did not meet his responsive burden of producing evidence to establish the existence of a triable issue of material fact as to whether Defendant intentionally retaliated against him based on religious creed in violation of section 12940. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at pp. 850-851.)

## IV.  DISPOSITION

The judgment is affirmed.  Defendant is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


AARON, Acting P. J.


GUERRERO, J.

29